IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE E. FISHER, Executor of the Estate of Bradley Fisher, Deceased<br>Plaintiff<br>VS.<br><br>CLARK AIKEN MATIK, INC., MARQUIP, INC., WILL-PEMCO, INC., Successor in Interest to Clark Aiken Matik, Inc., a/k/a PEMCO, INC.<br>Defendants | 3:CV-99-1976<br>(CHIEF JUDGE VANASKIE) |

## MEMORANDUM AND ORDER

Defendant Marquip, Inc. has moved to preclude the testimony of Gary M. Hutter, P.E., Ph.D., CSP, a mechanical engineer retained by Plaintiffs in this wrongful death products liability action. Plaintiff claims that Bradley Fisher sustained fatal injuries as a result of defects in the design, guarding and warnings associated with an industrial paper "splicer/sheeter" machine used by the International Paper Company.

The incident was described in more detail in this Court's Memorandum opinion of September 26, 2005 as follows:

> [I]nvolved in this accident was a paper "splicer" designed and manufactured by Defendant Marquip, Inc., and incorporated into a "sheeter" machine designed and manufactured by co-Defendant Will-Pemco, Inc., successor-in-interest to Clark Aiken Matik, Inc.
>
> The sheeter line operated at the International Paper plant starts with very large rolls of heavy paper as raw material. The paper

rolls are unspooled, and the sheeter line ultimately cuts the heavy paper to the desired length and stacks the cut paper. There are two pairs of roll stands that unspool the paper rolls, and each pair of roll stands is capable of feeding one roll of paper at a time to the sheeter line. A Marquip splicer is located above each pair of roll stands. The purpose of the Marquip splicer is to allow the sheeter line to run continuously by eliminating the need to stop the sheeter to allow for re-threading the paper each time a roll of raw material paper has been exhausted.

The splicer includes an element referred to as the "dancer roller," which is intended to move along the splicer in accordance with the size of the roll of paper being processed. Movement of the dancer roller is enabled by a sensor called a "potentiometer." The potentiometer is connected to the dancer system by a chain located in the "dancer track area."

The chain interacts with the potentiometer. The dancer system itself is connected to air cylinders by cables. The air cylinders provide the force that moves the dancer roller.

The Marquip splicer is an integral component of the sheeter machine. It enables the equipment to run 24 hours a day, 7 days a week. The sheeter itself is a unique machine, specifically designed and manufactured for use by International Paper at its Hazleton plant.

. . . The accident occurred while Fisher, with the assistance of Emil Kitlan, was attempting to dislodge a broken potentiometer chain. . .

Fisher climbed onto a paper roll stand, the top of which was approximately 3 feet above the ground, to dislodge and remove the chain. Kitlan climbed onto a catwalk above Fisher and the Marquip splicer. In order to dislodge the chain, Mr. Fisher removed a guard that covered a sprocket. Mr. Fisher was feeding the chain to Mr. Kitlan, who was standing above him. Prior to completely removing the chain, Mr. Fisher told Mr. Kitlan to stop pulling on the chain. An instant later, Mr. Kitlan "heard something let go," and out of the

> corner of his eye saw the dancer roller spring forward towards Mr.
> Fisher. The dancer roller pinned Mr. Fisher's head against one of
> the stationary rolls, crushing his skull and causing fatal injuries.

(Memorandum Opinion of September 26, 2005, Dkt. Entry 262, at 2-4.)

Dr. Hutter has expressed the following opinions relevant to the question of whether the product was defective at the time of its manufacture:

> The design of the equipment did not prevent, inhibit or warn workers not to enter the area of the equipment where Mr. Fisher was positioned at the time of his injury.
>
> There was a pinch point formed by the movement of a dancer roll and stationary structure. This could have been avoided by design.
>
> The design of the equipment invited workers into the area of this pinch point, and there were no warnings of this pinch point.
>
> The equipment was designed and/or programmed to cause and/or contribute to premature potentiometer chain failure.
>
> There were no adequate instructions about maintenance, inspection and/or replacement of the potentiometer chain . . .
>
> The failure of this chain and the accompanying effects and/or the functioning of the programmable controllers caused the dancer/roller to errantly move causing the formation of the pinch point.
>
> There was no alarming of the sudden, automatic and intermittent movement of the dancer roller.

(June 29, 2002 Report of Dr. Hutter at 7.)

As summarized at the outset of Dr. Hutter's Report, and as confirmed by the a review of his curriculum vitae, Dr. Hutter has:

3

> Degrees in engineering and safety; . . . over 25 years of professional experience in the safe design of equipment, safety, and in accident reconstruction; . . . been employed as a safety engineer and as a consultant; . . . evaluated and investigated numerous accidents, failures, and designs; . . . been involved with Occupational Safety and Health Administration (OSHA), American National Standards Institute (ANSI) and National Safety Council (NSC) safety committees and standards; . . . acquired the designations of a Registered Professional Engineer and Certified Safety Professional; . . . published in the area of safety; and teach[es] graduate college courses in various aspects of safety.

(Id. at 1.)

Although not directly challenging Dr. Hutter's qualifications to testify as an expert in this case, Marquip argues that "his methodology and subsequent opinion[s] failed to meet the standards set forth by [Fed. R. Evid.] 702 as they are not the product of reliable principles and methods but are merely conclusions based on general knowledge." (Motion in Limine to Preclude Dr. Hutter's testimony (Dkt. Entry 190) at ¶ 42.)  Marquip further asserts that exclusion of Dr. Hutter's testimony is "apparent from the . . . motion and memorandum [of law]." (Brief in Support of Motion in Limine (Dkt. Entry 191) at 9.)[1]

"[E]xpert testimony (1) must be based on sufficient facts and data; (2) must be product of a reliable methodology; and (3) must demonstrate a relevant connection between that

---

[1]Marquip requested a hearing only if deemed necessary by this Court. Plaintiff did not request a hearing. "An in limine hearing is not always required whenever a Daubert objection is raised to a proffer of evidence, and whether to hold a hearing rests in the sound discretion of the trial court." Parkinson v. Guidant Corp., 315 F. Supp. 2d 754, 756 n. 1 (W.D. Pa. 2004). In this case, the parties have presented the report and deposition testimony of the expert in question. Neither party has suggested the need for consideration of other evidence. Under these circumstances, an evidentiary hearing is neither warranted nor required. Id.

methodology and the facts of the case." Jaasma v. Shell Oil Co., 412 F.3d 501, 513 (3d Cir. 2005). These requirements derive from Rule 702 of the Federal Rules of Evidence and the United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The inquiry into the admissibility of expert testimony is a "flexible one," In Re: Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742, (3d Cir. 1994), undertaken with a recognition that "[t]he Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact," and that "Rule 702 . . . has a liberal policy of admissibility." Kannankeril v. Terminex International, Inc., 128 F.3d 802, 806 (3d Cir. 1997). The standard for admissibility "is not that high." Paoli, 35 F.3d at 745  The question is not whether the expert's conclusions are correct or rest on the "best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology." Kannankeril, 128 F.3d at 806-07. "The evidentiary requirement of reliability is lower than the merit standard of correctness." Paoli, 35 F.3d at 744.

Daubert identified several factors for determining whether the reasoning or methodology underlying an expert's opinions is scientifically valid. Daubert, 509 U.S. at 592-95.[2] The list of

---

[2]The factors identified in Daubert include:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review;(3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operations; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the

specific factors for assessing reliability of scientific testimony set forth in <u>Daubert</u>, however, "neither necessarily nor exclusively applies to all experts in every case." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999). In other words, the <u>Daubert</u> factors "are neither exhaustive nor applicable in every case." <u>Kannankeril</u>, 128 F.3d at 806-07. Instead, "whether <u>Daubert's</u> specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." <u>Kumho Tire</u>, 526 U.S. at 153. As explained in <u>Skidmore v. Precision Printing and Packing, Inc.</u>, 188 F.3d 606, 618, (5th Cir. 1999):

> Whether Daubert's suggested indicia of reliability apply to any given testimony depends no the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. It is a fact-specific inquiry. The district court's responsibility 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

A pertinent inquiry in all challenges to the admissibility of expert opinion evidence is whether the proposed witness qualifies as a person with the type of 'scientific, technical or other specialized knowledge' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue . . . .' Fed. R. Evid. 702. Marquip suggests that Dr. Hutter lacks the

---

qualifications of the expert witnesses testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

<u>Paoli</u>, 35 F.3d at 742 n. 8.

requisite specialized knowledge because "he has no experience in designing an automated splicer or been involved in the analysis of any machinery in a splicer line." (Brief in Support of Motion in Limine (Dkt. Entry 191) at 6.)  Specific experience with respect to a particular product, however, is not a sine qua non of qualification to testify.  Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).  Dr. Hutter is a registered professional engineer and certified safety professional.  He has extensive experience in the matters of product safety, guarding, and warnings.  Less clear, however, is his experience with respect to product design to avoid premature failure of a component part or to opine on metal fatigue due to inappropriate product design.  The inquiry into whether a person possesses the requisite specialized knowledge, however, is a liberal one. Paoli, 35 F.3d at 741.  "Exclusion is improper simply because an expert does not have the most appropriate degree or training." Reiff v. Convergent Technologies, 957 F. Supp. 573, 577 (D. N.J. 1997).  In this case, Dr. Hutter plainly possesses the requisite specialized knowledge to qualify as an expert with respect to questions concerning the safety of the machinery in terms of guarding, avoiding pinch points, and warnings.  Considered liberally, his qualifications also suggest he may have the requisite specialized knowledge to opine as to premature potentiometer chain failure.

Marquip also contends that Dr. Hutter's opinions are not based upon "sufficient facts or data," Fed. R . Evid. 702, claiming that he had not reviewed all of the discovery materials and depositions before preparing his report.  Plaintiff counters by pointing out that his report

7

confirms that he had reviewed the deposition of the only eyewitness to the accident, Emil Kitlan. He also conducted two site visits.  The International Paper Company, however, would not allow Dr. Hutter's inspections to interfere with production, and he was only able to observe and videotape the operation of the machinery in question.  He also examined the broken potentiometer chain.  Plaintiff further represents that Dr. Hutter has now reviewed all the depositions of fact witnesses in this case, and points out that Defendant has not cited any deposition testimony that would indicate that Dr. Hutter has failed to consider pertinent facts or data.

With the exception of the opinion on "premature chain failure by wear and/or shock," (Dr. Hutter's June 29, 2002 Report at 5), I find that Dr. Hutter had sufficient facts and data upon which to premise his conclusions.  A "trial judge must be careful not to mistake credibility questions for admissibility questions."  Kannankeril, 128 F.3d at 809.  In this case, questions concerning whether Dr. Hutter considered all pertinent data in connection with his opinions on the sudden and unexpected movement of a dancer roller, pinch points, guarding, and warnings affect credibility, but do not preclude admissibility.

A contrary conclusion, however, is compelled with respect to the opinion pertaining to improper product design causing premature potentiometer chain failure.  His report does not indicate how long the chain in question had been in service before it broke.  By use of the term, "premature," Dr. Hutter obviously recognized that chain replacement would occasionally be

8

required. Furthermore, there are no facts or data in his report sufficient to support a conclusion that the chain in question failed due to "shock." In this regard, no metallurgic testing of the chain was conducted. Accordingly, Dr. Hutter will be precluded from expressing any opinion as to the matter of alleged premature failure of the chain and associated product design issues.

Marquip contends that the other opinions expressed by Dr. Hutter are not premised upon reliable methodology. Recognizing that the Daubert factors are generally not applicable in technical fields such as engineering, the Hon. Joseph Irenas has identified helpful indicia of reliability that are helpful in the setting presented here. They include:

> (1) federal design and performance standards; (2) standards established by independent standards organizations; (3) relevant literature; (4) evidence of industry practice; (5) product design and accident history;(6) illustrative charts and diagrams; (7) data from scientific testing; (8) the feasibility of suggested modification; and (9) the risk/utility of suggested modification.

Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 536 (D.N.J. 2001).

Assessment of Dr. Hutter's opinions in the context of these indicia of reliability compels a determination that his opinions are admissible. His opinions are linked to OSHA, ANSI, and NSC standards. He also references industry practice. His opinions are supported by computer generated animations and diagrams. Significantly, Marquip has not tendered an affidavit of an expert asserting that Dr. Hutter's opinions failed to adhere to "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152.

Expert testimony should be admitted "if there are 'good grounds' for the expert's

conclusion," notwithstanding the "judge's belief that there are better grounds for some alternative conclusions." Heller v. Shaw Industries, 167 F.3d 146, 152-53 (3d Cir.1999). Plaintiff has shown that "good grounds" exist for all of Dr. Hutter's conclusions, with the exception of the purported premature failure of the potentiometer chain.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion in Limine to preclude Gary M. Hutter from testifying (Dkt. Entry 190) is **GRANTED IN PART.** Dr. Hutter is precluded from testifying as to an alleged premature failure of the potentiometer chain and associated product design issues.

2. In all other respects, Marquip's motion in limine as to Dr. Hutter is **DENIED.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

O:\VANASKIE\DAVIES\OPINIONS\fisher4.wpd